**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY,

      Plaintiff,

v.                                          Case No: 8:24-cv-1064-CEH-AEP

SPINE CENTERS OF AMERICA,
INC., ROBERT CAGNO, LESTER
MORALES, JR., BRIAN CARLTON,
DC, ANTHONY HERNANDEZ,
LIFESPINE, LLC, ZOLTAN
BERECZKI, DO, NORTH FLORIDA
ORTHOPEDIC MEDICINE LLC,
GEORGE EL BAHRI, DO,
SURGICAL CENTER OF NORTH
FLORIDA, LLC, and LEGACY
SURGERY CENTER, LLC,

      Defendants.

_____/

## O R D E R

      This matter comes before the Court on Defendant Surgical Center of North

Florida, LLC's Corrected Motion to Dismiss Complaint (Doc. 37) and Defendants'

Motion to Dismiss and Strike (Doc. 41) filed by Spine Centers of America, Inc.; Robert

Cagno; Lester Morales, Jr.; Brian Carlton, DC; Anthony Hernandez; Lifespine, LLC;

Zoltan Bereczki, DO; George El Bahri DO; North Florida Orthopedic Medicine LLC;

and Legacy Surgery Center, LLC. In the motions, Defendants request dismissal of

Plaintiff's Complaint for failure to state a claim. Additionally, Defendant Anthony

Hernandez seeks to strike certain allegations of the Complaint directed against him. Plaintiff filed responses in opposition. Docs. 42, 44. The Court, having considered the motions and being fully advised in the premises, will grant-in-part and deny-in-part Defendants' motions to dismiss and strike.

## I.    BACKGROUND[1]

In this action involving allegations of unlawful patient brokering, Plaintiff State Farm Mutual Automobile Insurance Company ("Plaintiff" or "State Farm") sues multiple surgeons, Surgery Centers, and a non-doctor owned referral entity and its executives for unjust enrichment and violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA), Fla. Stat. §§ 501.201–213. Doc. 1. State Farm alleges that Defendants jointly perpetrated a scheme through which patients were referred for medical services to maximize Defendants' financial gains in connection with patients' personal injury claims. Doc. 1 ¶ 2.

Florida has a well-established public policy of prohibiting patient brokering to safeguard the public health and protect consumers from harm. *Id.* ¶ 1. State Farm alleges this is so because patient brokering arrangements have the potential to place injured persons in danger of increased risk due to unnecessary medical procedures being recommended and performed. *Id.* ¶ 33. To prohibit such improper patient

---

[1] The following statement of facts is derived from the Complaint (Doc. 1), the allegations of which the Court must accept as true in ruling on the instant motions to dismiss. *Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F.2d 989, 994 (11th Cir. 1983); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

referral arrangements, Florida statutes prohibit the payment or receipt of cash or in-kind commissions, kickbacks, or rebates for referring or soliciting patients. *Id.* ¶ 34; *see* Fla. Stat. § 817.505 ("the Patient Brokering Statute"). A violation of the Patient Brokering Statute is a third-degree felony. Doc. 1 ¶ 37; Fla. Stat. § 817.505(4). State Farm alleges that Defendants' unlawful patient referral arrangement ("Unlawful Referral Arrangement") violates the Patient Brokering Statute. Doc. 1 ¶ 41. State Farm further alleges the arrangement violates FDUTPA and Florida's law prohibiting insurance fraud. Doc. 1 ¶¶ 38–43.

State Farm names as Defendants the following entities and individuals referred to collectively as the "Spine Center Defendants": Spine Centers of America, Inc. ("Spine Centers"), Robert Cagno ("Cagno"), Lester Morales, Jr. ("Morales"), Brian Carlton, DC ("Carlton"), and Anthony Hernandez ("Hernandez"). Doc. 1 ¶¶ 12–16. Spine Centers is alleged to be the "middleman" or broker. *Id.* ¶ 48. Spine Centers does all the marketing promotions and generates the patients. *Id.* Spine Centers does not provide either medical professional or technical services to patients. *Id.* ¶ 46. Instead, Spine Centers engages independent contractors to perform the professional and technical components of the injections or surgeries. *Id.* Spine Centers is not owned by, nor does it employ, medical doctors. *Id.* ¶ 51.

Morales is the Chief Executive Officer of Spine Centers. *Id.* ¶ 13. He is responsible for developing, managing, and advancing Spine Centers' relationships with the physicians it engages. *Id.* Cagno is the Chief Operating Officer of Spine Centers. *Id.* ¶ 14. Carlton is licensed in Florida as a chiropractic physician, and with

Cagno, he is responsible for setting prices for the services billed by Spine Centers. *Id.* ¶ 15. Carlton also played a major role in Spine Centers' marketing as a clinic he owned, BC Health Care Consulting, LLC d/b/a West Pasco Spine & Injury, referred patients to Spine Centers. *Id.* ¶ 50. Hernandez is the Chief Marketing Officer of Spine Centers. *Id.* ¶ 16. Hernandez is alleged to have been sentenced in October 2020 to six months in federal prison after pleading guilty to making false statements related to health care matters and for conspiracy to commit money laundering. *Id.*

State Farm sues the following Defendants, who are collectively referred to as "the Surgeons": Zoltan Bereczki, DO ("Dr. Bereczki"), Lifespine, LLC ("Lifespine"), George El Bahri, DO ("Dr. El Bahri"), and North Florida Orthopedic Medicine LLC ("North Florida Ortho"). *Id.* ¶¶ 17–20. Dr. Bereczki has been licensed in Florida as an osteopathic physician since 2006. *Id.* ¶ 17. He is the manager and sole member of Lifespine. *Id.* ¶ 18; Doc. 14 at 2. Dr. El Bahri is a Florida licensed osteopathic physician since 2012. Doc. 1 ¶ 19. He is the manager and sole member of North Florida Ortho. *Id.* ¶ 20; Doc. 14 at 3.

State Farm sues Surgical Center of North Florida, LLC d/b/a Surgery Center of North Florida ("SCNF"), and Legacy Surgery Center, LLC ("Legacy") (collectively, the "Surgery Centers"). Doc. 1 ¶¶ 21–22. SCNF, located in Gainesville, Florida, has been licensed as an ambulatory surgery center since April 2015. *Id.* ¶ 21. Legacy is located in Tampa, Florida, and has been licensed as an ambulatory surgery center since September 2018. *Id.* ¶ 22.

The Spine Center Defendants, the Surgeons, and the Surgery Centers entered into agreements through which Spine Centers referred patients to the Surgeons and Surgery Centers for injections and surgical procedures. *Id.* ¶ 44. Spine Centers profited from the patient referrals by generating bills which far exceeded the amounts paid to the Surgeons and Surgery Centers for their services. *Id.* ¶ 47. Lifespine and North Florida Ortho are paid by Spine Centers a predetermined amount based on the Medicare Fee Schedule for each service they perform on a patient referred by Spine Centers. *Id.* ¶ 52. Dr. Bereczki testified he was paid a standard fee for each service performed. *Id.* ¶ 52. For example, Dr. Bereczki was paid $2,000 for a surgery that was professionally billed by Spine Centers for $47,688. *Id.* ¶ 53. In exchange for the patient referrals and the predetermined payments that Lifespine and North Florida Ortho received, Spine Centers was permitted to bill insurers for the procedures. *Id.* ¶ 54. Spine Centers generated the bill on a UB-04 claim form for services rendered by Lifespine and North Florida Ortho as "the providers." *Id.* The "provider" charges for the procedures at issue ranged between $4,410 and $16,027 for injections and between $19,742 and $58,709 for surgeries. *Id.* Spine Centers independently determined the amount of the "provider" charge, without regard to the predetermined rate actually paid to Lifespine and North Florida Ortho. *Id.* Lifespine and North Florida Ortho did not receive any payments beyond the predetermined rates paid by Spine Centers for each procedure. *Id.* ¶ 55.

Spine Centers developed similar relationships with the Surgery Centers whereby Spine Centers paid the Surgery Centers a pre-arranged lease payment for the use of

their facilities. *Id.* ¶ 56. In exchange for patient referrals and the predetermined payments they received, the Surgery Centers authorized Spine Centers to submit bills to insurers for rates determined by Spine Centers, without regard to what Spine Centers actually paid the Surgery Centers. *Id.* ¶ 57. The "facility" charges submitted on the UB-04 claim form submitted by Spine Centers constituted the charge for services rendered by the Surgery Centers. *Id.* The "facility" charges for the procedures at issue range between $5,550 and $28,189 for injections and between $33,564 and $69,847 for surgeries. *Id.* Thus, Spine Centers billed insurers for the technical components (covers the use of equipment, facilities, non-physician medical staff, and supplies) and professional (physician's professional services) components despite not providing any of the services to the patients, which State Farm alleges constitutes an illegal fee-split. *Id.* ¶¶ 45, 55, 58.

The amount Spine Centers placed on the bills to be submitted to State Farm for claims on State Farm policies was unrelated to the amount Spine Centers actually paid to the Surgeons and the Surgery Centers. *Id.* ¶ 60. The result is Spine Centers' bills constituted the vast majority of the medical bills submitted to State Farm as purported medical expenses. *Id.* ¶ 61. Once all of a claimants' bills are received ("the Global Bills"), including the inflated bills from Spine Centers, a patient's personal injury attorney submits the bills to State Farm for payment under a policy of insurance. *Id.* ¶ 62. State Farm alleges that the Spine Centers' bills frequently exceed the available policy limits, pressuring State Farm into tendering the same to avoid a claim for bad faith. *Id.* ¶ 63. State Farm further alleges that the misleading demand packages that

include the Global Bills fail to disclose that the Spine Centers' bills were the product of an unlawful patient referral arrangement, that Spine Centers did not perform any of the services for which it billed, or the amount actually paid to the Surgeons and Surgery Centers for the services rendered. *Id.* ¶¶ 64, 68. At all times, Defendants knew that Spine Centers' charges would be provided to insurance companies, like State Farm, in connection with patients' demands for payment. *Id.* ¶ 65. The demand package intended to exert pressure on State Farm to settle within the policy limits or risk being exposed to a bad faith claim. *Id.* ¶ 69.

State Farm has the right under its policies to investigate, negotiate and settle any claim or lawsuit. *Id.* ¶ 73. In evaluating the settlement demands and resulting settlements that State Farm itemizes in Exhibit 1 to its Complaint,[2] State Farm relied upon demand letters, follow-up correspondence from the patients' counsel as well as the medical records, bills, invoices, and other documentation supplied to evaluate and properly adjust each patient's claim. *Id.* ¶ 74. State Farm also relied upon the fact that the claims were submitted on UB-04 claim forms, which include a certification as to the truth and accuracy of the charges being submitted by Defendants. *Id.* ¶ 75. State Farm's claims representatives relied on the representations of patients as to the amounts owed as listed on the Spine Centers' bills or in the medical records, when in fact State Farm did not owe these amounts because of Defendants' false statements

---

[2] Exhibit 1 consists of a summary of 28 claims settled by State Farm for accidents occurring from March 2017 to March 2022, in which most of the medical bill total for each personal injury patient was from the Spine Centers' bill. Doc. 1-2.

and the Unlawful Referral Arrangement. *Id.* ¶ 76. When State Farm settled the claims identified in Exhibit 1 to the Complaint, State Farm was unaware of the Unlawful Referral Arrangement. *Id.* ¶ 77. Had State Farm known the truth of the Unlawful Referral Arrangement among Defendants, State Farm would not have paid the settlements for claims identified in Exhibit 1 to the Complaint. *Id.* ¶ 80. As a result of its reliance, State Farm was induced to pay more than three million dollars to resolve bodily injury (BI) and uninsured motorist (UM) claims based on Defendants' allegedly fraudulent invoices. *Id.* ¶ 81. The amounts paid to settle these claims was significantly more than State Farm would have paid had it been supplied complete, accurate, and truthful information. *Id.*

State Farm's policies of insurance require State Farm to pay for damages or covered losses for which State Farm's insureds become legally liable to pay, up to the policies' respective insurance limits. *Id.* ¶ 82. State Farm alleges that its insureds are not legally liable for Spine Centers' inflated charges resulting from the fee-split arrangement, which is prohibited by Florida law. *Id.* State Farm should have been able to disregard the Spine Centers' inflated charges when adjusting claims without concern that failing to account for the overstated charges could negatively impact State Farm's insureds. *Id.* State Farm alleges that Defendants' conduct violated section 817.505, Florida Statutes (prohibiting paying or receiving any type of "bonus, rebate, kickback, or bribe, directly or indirectly, in cash or in kind" for referring patients to or from a health care provider) and section 456.054(2), Florida Statutes (prohibiting any health care provider from offering, paying, soliciting, or receiving "a kickback, directly or

indirectly, overtly or covertly, in cash or in kind, for referring or soliciting patients"). *Id.* ¶ 83.

In a two-count Complaint, State Farm sues Defendants for violations of FDUTPA and for unjust enrichment. Doc. 1. Defendant SCNF moved to dismiss the Complaint. Doc. 37. The remaining Defendants—the Spine Center Defendants, the Surgeons, and Legacy—jointly moved to dismiss State Farm's Complaint and to strike certain allegations regarding Defendant Hernandez on the basis that they are irrelevant and highly prejudicial. Doc. 41.

## II.    LEGAL STANDARD

### A. Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient.  *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Furthermore, mere naked assertions are not sufficient.  *Id.*  A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

(citation omitted). The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id*.

### B. Motion to Strike

Rule 12(f) provides that a court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f) (emphasis added). "The purpose of a motion to strike is to clean up the pleadings, remove irrelevant or otherwise confusing materials, and avoid unnecessary forays into immaterial matters." *Haegele v. Judd*, No. 8:19-CV-2750-VMC-CPT, 2020 WL 3288030, at *1 (M.D. Fla. June 19, 2020).

### III.   DISCUSSION

Defendants have filed two motions to dismiss—SCNF has filed its own motion (Doc. 37) and the remaining Defendants (Spine Centers Defendants, the Surgeons, and the Surgery Centers) have filed a joint motion (Doc. 41). To the extent the arguments in the two motions overlap, the Court addresses the arguments together. In sum, SCNF seeks dismissal of State Farm's Complaint on the following grounds: (1) the alleged conduct was not patient brokering; (2) the allegations of fraud have not been pleaded with particularity as required by Rule 9(b); (3) the FDUTPA claim is preempted by the Florida OIR's authority to regulate deceptive and unfair practices related to insurance claims; and (4) the unjust enrichment claim fails because Plaintiff cannot show a benefit directly conveyed to this Defendant. The remaining Defendants argue that (1) State Farm cannot allege that it conferred a direct benefit on them in order to state an unjust enrichment claim under Florida law; (2) the unjust enrichment

claim must be dismissed because the claim is predicated on the same conduct as the FDUTPA claim; (3) , State Farm fails to plead its fraud claims with particularity, as required by Federal Rule of Civil Procedure 9(b), except as it pertains to the Defendant Spine Centers; (4) the voluntary payment doctrine precludes 18 settled claims because State Farm voluntarily settled those claims even after it was on notice of the precise nature of the Defendants' business model through deposition testimony. Finally, Hernandez moves to strike the allegations of his past criminal conduct.

### A. Whether Alleged Conduct was Patient Brokering

SCNF argues the Complaint fails to state a claim and contends that the conduct alleged to be unlawful, when "stripped of all innuendo," was not patient brokering. Doc. 37 at 10–13. While the Defendant characterizes this as a "legal argument," it is necessarily fact intensive. SCNF relies on the *Crow v Agency for Health Care Administration*, 669 So. 2d 1160 (Fla. 5th DCA 1996) opinion, but that case does not stand for the proposition that it is being offered.[3] Moreover, the *Regional MRI of Orlando, Inc. v. Nationwide Mutual Fire Insurance Co.*, 884 So. 2d 1102 (Fla. 5th DCA 2004) case, cited by Defendant, was decided on summary judgment, not at the motion to dismiss stage. The courts in those cases examined the particular facts to determine whether there was a violation of Florida statutes prohibiting the payment or receipt of

---

[3] Defendant cites *Crow v Agency for Health Care Administration*, 669 So. 2d 1160 (Fla. 5th DCA 1996) for the proposition that there was no illegal fee-splitting if the physician was paid a predetermined salary and bonus based on the value of the services rendered. Doc. 37 at 11. To the contrary, the *Crow* court rejected Crow's reading of the statute as being "too narrow" when he argued that Florida statute § 458.331 prohibits payment of bonuses *only* in connection with *referral services*.

commissions, bonuses, kick-backs, rebates, or engaging in any split-fee arrangement. On a motion to dismiss, the Court does not undertake an analysis of competing facts, but instead accepts the well-pleaded allegations as true. Here, Plaintiff has alleged the existence of a patient brokering relationship. Whether such a relationship is ultimately established cannot be decided on the instant motion. SCNF's argument that the arrangement was not unlawful patient brokering is more appropriately raised on summary judgment. The motion to dismiss on this argument is due to be denied.

## B. FDUTPA

In relevant part, the purpose of FDUPTA is "to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2). To state a claim under FDUTPA, a plaintiff must allege "(1) a deceptive act or unfair trade practice; (2) causation; and (3) actual damages." *Dolphin LLC v. WCI Cmtys., Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013) (citing *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006)). An unfair trade practice is "one that 'offends established public policy' and one that is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Rollins*, 951 So. 2d at 869 (quoting *Samuels v. King Motor Co. of Fort Lauderdale*, 782 So. 2d 489, 499 (Fla. 4th DCA 2001)).

### 1. Pleading Fraud Claims with Particularity

Defendants argue that State Farm fails to plead its claims of fraud with particularity to satisfy Rule 9(b) so as to provide notice to Defendants of their alleged

wrongful conduct. Doc. 37 at 13–18; Doc. 41 at 18–23. SCNF contends that the allegations of its involvement in the alleged patient brokering is thin and argues that the allegations of improper billing lack particularity because no bills are attached to the Complaint. Additionally, SCNF claims State Farm alleges that fraud was committed based on the preprinted language on the back of the UB-40 forms, but State Farm does not allege that the backside of the particular forms were actually submitted to State Farm. Further, SCNF argues that Defendants are collectively grouped together for purposes of joint allegations against all Defendants, but there is no apparent connection between this Defendant and Legacy (the other surgery center) besides the allegation that both did business with Spine Centers.

The remaining Defendants argue that the allegations against them are speculative and fail to specify with particularity the "who, what, when, where, and how" the fraudulent claims were submitted. They urge that the FDUTPA claims against Cagno, Morales, Carlton, Hernandez, Lifespine, Bereczki, North Florida Ortho, Bahri, and Legacy be dismissed.

This Court and others have noted that federal district courts in this Circuit have split as to whether FDUPTA claims are subject to Rule 9(b) pleading requirements. *See Gibson v. Resort at Paradise Lakes, LLC*, No. 8:16-CV-791-CEH-AAS, 2017 WL 3421532, at *3 (M.D. Fla. Aug. 9, 2017) (collecting cases); *see also Pop v. Lulifama.com LLC*, No. 8:22-cv-2698-VMC-JSS, 2023 WL 4661977, at *2 (M.D. Fla. July 20, 2023) (finding "[c]ourts in this district have varied on whether a claim for relief under FDUTPA must also meet Rule 9(b)'s heightened pleading standard"). "The trend has

been for courts to apply the Rule 9(b) standard when FDUTPA claims sound in fraud." *Altamonte Pediatric Assocs., P.A. v. Greenway Health, LLC*, No. 8:20-CV-604-VMC-JSS, 2020 WL 5350303, at *3 (M.D. Fla. Sept. 4, 2020) (citing *Hummel v. Tamko Bldg. Prods.*, No. 6:15-cv-910-PGB-GJK, 2015 WL 12843907, at *2–3 (M.D. Fla. Nov. 6, 2015) (finding that the plaintiff's FDUTPA claim had to be pled with particularity because it was primarily based on allegations sounding in fraud); *Casey v. Fla. Coastal Sch. of Law, Inc.*, No. 3:14-cv-1229-BGD-PDB, 2015 WL 10096084, at *10 (M.D. Fla. Aug. 11, 2015) (recognizing this trend)). "The 'particularity' requirement serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 86 (11th Cir. 2008) (citation omitted).

In its Complaint, State Farm alleges the following fraudulent conduct: Defendants made false and misleading representations and omissions in furtherance of the Unlawful Referral Arrangement (Doc. 1 ¶ 72); Defendants knew the Spine Centers' Global Bills submitted to State Farm contained false, incomplete, and misleading information (*id.* ¶ 90). State Farm alleges that Defendants violated the insurance fraud statute, by knowingly presenting or causing to be presented a false claim for payment, which under Fla. Stat. § 626.9541(1)(u), is an "unfair and deceptive act," (Doc. 1 ¶¶ 96–98), and that this conduct is *per se* unfair and deceptive under the FDUTPA (*id.* ¶ 99). State Farm alleges that the Defendants jointly are liable for the false claims submitted because they each played an essential role as the orchestrators

14

of the Unlawful Referral Arrangement. (*id*. ¶ 102). State Farm does not refute that it must plead its fraud claims with particularity but contends its allegations of the Unlawful Referral Arrangement scheme satisfies this requirement.

The Eleventh Circuit has recognized that fraud's particularity requirement may be relaxed for allegations of "prolonged multi-act schemes." *Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x 657, 662–63 (11th Cir. 2015) (quoting *U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1314 n. 25 (11th Cir. 2002)). The relaxed standard permits a plaintiff to plead the overall nature of the fraud and then to allege with particularity one or more illustrative instances of the fraud. *See id.* Even under the relaxed requirement, however, a plaintiff is still required to allege at least some examples of fraudulent conduct to lay a foundation for the rest of the allegations of fraud. *See id.*

In its general allegations, State Farm's Complaint pleads specific examples of the fraudulent scheme. Doc. 1 ¶ 70. As it relates to the FDUPTA claim in Count One, State Farm alleges that Defendants engaged in unfair and deceptive acts and practices in violation of FDUTPA for each claim identified in Exhibit 1. *Id.* ¶ 93. The unfair practices include brokering patients in violation of Section 817.505, Fla. Statutes. *Id.* ¶ 94. State Farm alleges that pursuant to the unlawful referral agreement, Spine Centers, the Surgeons, and the Surgery Centers entered into agreements through which Spine Centers referred patients to the Surgeons and Surgery Centers for injections and surgical procedures. *Id.* The Spine Centers paid the Surgeons a predetermined flat rate for the professional services of the injections and surgeries. *Id.* The Spine Centers paid

the Surgery Center a predetermined lease payment for use of the facilities. *Id.* In exchange for the patient referrals, the Surgeons and Surgery Centers allowed Spine Centers to determine the charges for their services, which greatly exceeded what they agreed to accept as payment in full. *Id.* The arrangement was designed to ensure a flow of patients from Spine Centers to the Surgeons and the Surgery Centers for mutual financial gain. *Id.* State Farm alleges that these practices also violated Florida's Insurance Fraud Statute § 817.234(1)(a)(1)-(2), which precludes the presentation of a claim for payment to an insurer knowing that the claim contains false, incomplete or misleading information.  Doc. 1 ¶ 95. State Farm further alleges that the Defendants knowingly presented or caused to be presented to State Farm false claims for payment when the Spine Centers' Global Bills were included in demand packages from patients' personal injury attorneys. *Id.* ¶ 98. State Farm asserts that the Defendants' conduct was *per se* unfair and deceptive under FDUTPA, *id.* ¶ 99, and was contrary to Florida public policy, *id.* ¶ 101. State Farm's insurance policies exclude coverage for false claims. *Id.* ¶ 104. State Farm contends that each Defendant is jointly liable for the false claims submitted to State Farm because they each played an essential role in the unlawful referral arrangement. *Id.* ¶ 102.

Regarding Defendant Morales, he is alleged to be responsible for the day-to-day operations and business planning decisions on behalf of Spine Centers (*id.* ¶ 13). As to Defendants Cagno and Carlton, they are alleged to have set the inflated prices for the services billed by Spine Centers (*id.* ¶ 15). Hernandez is alleged to be the Chief

16

Marketing Officer for Spine Centers (*id.* ¶ 16). State Farm alleges that the marketing constitutes a significant aspect in the scheme by generating patients to be referred to the Surgeons and Surgery Centers. (*id.* ¶¶ 48–50). The role of the Surgeons and Surgery Centers was to allow Spine Centers to determine the charge for the services, notwithstanding what the Surgeons and Surgery Centers were actually paid, and to submit those charges to State Farm. (*id.* ¶ 44). In exchange, the Surgeons and Surgery Centers received a steady flow of patients. (*id.*)

Accepting State Farm's allegations of the Unlawful Referral Arrangement as true, State Farm adequately alleges a multi-act scheme in which Defendants engaged in deceptive and unfair conduct that satisfies the relaxed particularity requirement and is sufficient to allege a deceptive or unfair trade practice. *See Metrahealth Ins. Co. v. Anclote Psychiatric Hosp., Ltd.*, 1997 WL 728084 (M.D. Fla. Oct. 23, 1997) ("Personal involvement is not required after a defendant involves himself in a fraudulent scheme; he may be liable for the acts of his co-schemers." *Id.* at *3 (citing *United States v. Funt*, 896 F.2d 1288, 1294 (11th Cir. 1990)).

Alternatively, State Farm has satisfied the first element of the FDUTPA claim by alleging that Defendants' conduct is *per se* deceptive for violating the insurance fraud and patient brokering statutes. *See Felice v. Invicta Watch Co. of Am., Inc.*, No. 16-CV-62772, 2017 WL 3336715, at *2 (S.D. Fla. Aug. 4, 2017) (a party may allege either a traditional or *per se* violation of FDUTPA). A *per se* violation is established in one of two ways: (1) if the "law, statute, rule, regulation, or ordinance" expressly constitutes a violation of the FDUTPA or (2) the statute, rule or ordinance proscribes

17

unconscionable, deceptive, or unfair acts or practices and therefore operates as an implied FDUTPA predicate. Fla. Stat. § 501.203(3)(c); *Parr v. Maesbury Homes, Inc.*, No. 6:09-cv-1268-PCF-GJK, 2009 WL 5171770, at *7 (M.D. Fla. Dec. 22, 2009). Though a violation of a predicate statute satisfies the first element of the FDUTPA claim, a party is still required to plead causation and damages. *Parr*, 2009 WL 5171770, at *8. In Count One, State Farm alleges that it sustained damages as a result of Defendants' deceptive and unfair practices. Thus, causation has been alleged as State Farm alleges that the harm resulted from the FDUTPA violation.

SCNF contends that State Farm's FDUTPA claim fails because State Farm cannot plead entitlement to damages. In support, SCNF argues that State Farm does not assert allegations of the market value of services rendered to claimants and FDUTPA does not allow for the recovery of speculative damages. Doc. 37 at 22–25. State Farm responds that it has adequately alleged damages. In its Complaint, State Farm alleges that the claims submitted were the product of Defendants' unlawful scheme, in violation of Florida law and Florida public policy, and excluded under State Farm's policies of insurance. State Farm alleges that it paid significantly more than it would have paid had it known of the Unlawful Referral Arrangement. Accepting these allegations as true, as the Court must do on the instant motion, State Farm has alleged it sustained damages. As State Farm has adequately alleged the elements of its FDUTPA claim against Defendants, the motions to dismiss the FDUTPA claim for failure to state a claim are due to be denied.

## 2. FDUTPA Not Preempted by OIR

SCNF alternatively argues that the FDUTPA claim must be dismissed because it is preempted by the Florida OIR. Doc. 37 at 21–22. However, SCNF fails to provide legal support that FOIR has the sole authority to govern these claims such that a FDUTPA claim is wholly precluded. And State Farm relies on numerous district court opinions in this Circuit rejecting similar arguments. *See* Doc. 42 at 15. The relevant provision of FDUTPA provides that the Act does not apply to "[a]ny person or activity regulated under laws administered by … [t]he Office of Insurance Regulation of the Financial Services Commission." Fla. Stat. § 501.212(4)(a). Thus, SCNF argues State Farm's FDUTPA claim is barred. However, "Florida courts resolve questions about the applicability of this provision by looking to the activity which is the subject of the lawsuit, and whether that activity is subject to the regulatory authority of the Office of Insurance Regulation." *State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.*, 427 F. App'x 714, 723 (11th Cir. 2011), *rev'd in part on other grounds by State Farm Mut. Auto. Ins. Co. v. Williams*, 563 F. App'x 665, 671 (11th Cir. 2014). In that case, the Eleventh Circuit concluded the fraudulent billing conduct of which State Farm complained was not a type regulated by the Office of Insurance Regulation, and therefore the exemption of Fla. Stat. § 501.212(4)(a) did not apply. *Id.* at 723. Accepting State Farm's allegations as true, which the Court must do on the instant motion, State Farm asserts similar claims of fraudulent billing conduct by health care providers and their affiliates, and thus a FDUTPA claim is not precluded under § 501.212(4)(a). *See State Farm Mut. Auto. Ins. Co. v. Health & Wellness Servs., Inc.*, 389 F.

Supp. 3d 1137, 1150 (S.D. Fla. 2018) (finding alleged fraudulent billing activities by medical providers are not regulated by the Office of Insurance regulation). The motion to dismiss is due to be denied on this argument.

### C. Unjust Enrichment

In Count Two, State Farm sues all Defendants for unjust enrichment under Florida law. Doc. 1 ¶¶ 106–115. State Farm alleges that Spine Centers submitted charges of more than three million dollars, along with supporting documentation, to be included in settlement demands made to State Farm. *Id.* ¶ 107. Following the resolution of the BI or UM claim, State Farm conferred a benefit on Defendants by issuing a settlement payment to the patient's attorney. *Id.* ¶ 108. The patient's attorney remitted a portion of the settlement payment to Spine Centers, which held a medical lien on the settlement proceeds. *Id.* Morales, Cagno, Carlton and Hernandez received a benefit through their ownership and control of Spine Centers and through payments made to them by Spine Centers. *Id.* ¶ 109. The Surgeons and Surgery Centers are alleged to have derived a benefit from the Unlawful Referral arrangement because they received predetermined payments from Spine Centers in connection with the patient brokering scheme. *Id.* ¶ 110. State Farm alleges it would be inequitable to allow Defendants to retain the benefit of the monies paid where Defendants knowingly made false statements, misrepresented facts, and engaged in the unlawful patient referral arrangement. *Id.* ¶ 111. State Farm contends that any payments received pursuant to the Unlawful Referral Arrangement should be disgorged because the agreement violates the State Farm insurance policy and Florida public policy. *Id.* ¶ 112. State

Farm alleges that Defendants are jointly liable for the fraudulent and misleading invoices and supporting documentation submitted to State Farm because of the role each Defendant played in orchestrating the unlawful referral arrangement. *Id.* ¶ 113. State Farm alleges it has been damaged by Defendants' wrongful conduct, and to allow Defendants to retain the benefits would result in Defendants being unjustly enriched. *Id.* ¶¶ 114, 115.

Under Florida law, a claim for unjust enrichment has three elements: "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendant to retain it without paying the value thereof." *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012) (citing *Fla. Power Corp. v. City of Winter Park*, 887 So. 2d 1237, 1241 n.4 (Fla. 2000)).

In its motion to dismiss the unjust enrichment claim, SCNF makes two arguments. First, SCNF argues that State Farm did not confer a *direct* benefit on SCNF, and second, the alleged statutory violations do not provide for a private cause of action. Doc. 37 at 18–20. In their motion to dismiss, the remaining Defendants (Spine Centers, Cagno, Morales, Carlton, Hernandez, Lifespine, Berecki, Bahri, and North Florida Ortho), similarly argue the unjust enrichment claim fails because State Farm cannot allege it conveyed a direct benefit on these Defendants. Doc. 41 at 7–13. They also argue that the claim involves the same conduct as alleged in the FDUTPA claim and thus there is no equitable remedy available where there is an adequate legal remedy. *Id.* at 13–15. The Court first addresses the issue of whether State Farm

conferred a direct benefit, as the motions to dismiss rise and fall on this first element of the unjust enrichment claims.

.       **1. Conferral of Direct Benefit**

The Complaint alleges that State Farm's payments of Spine Centers' bills were made to personal injury plaintiffs' attorneys, and not directly to any of the Defendants. Thus, Defendants argue that, at best, State Farm's payments resulted in an indirect benefit to Spine Centers. Defendants submit this is insufficient under Florida law to state a claim for unjust enrichment.

Defendants are correct that, in general, in order for a plaintiff to prevail on an unjust enrichment claim under Florida law, "the plaintiff must directly confer a benefit to the defendant." *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1101 (11th Cir. 2021) (quoting *Kopel v. Kopel*, 229 So. 3d 812, 818 (Fla. 2017)). However, several state and federal courts that have considered the issue have determined that a direct benefit does not necessarily mean a direct contact. *See Cape, LLC v. Och-Ziff Real Est. Acquisitions LP*, 370 So. 3d 1010, 1017 (Fla. 5th DCA 2023) (finding "[i]t would not serve the principles of justice and equity to preclude an unjust enrichment claim merely because the 'benefit' passed through an intermediary before being conferred on a defendant"); *In re Takata Airbag*, 462 F. Supp. 3d 1304, 1328 (S.D. Fla. 2020) (direct benefit may be conferred through indirect contact); *Weinberg v. Advanced Data Processing, Inc.*, 147 F. Supp. 3d 1359, 1368 (S.D. Fla. 2015) (direct benefit may go through intermediary). That is, a benefit passing through an intermediary will not, without more, eliminate the "direct" nature of the benefit. *Uniq Branch Off. Mexico, S.A. de C.V. v. Steel Media*

22

*Grp., LLC*, No. 22-23876-CIV, 2024 WL 1406558, at *3 (S.D. Fla. Apr. 2, 2024); *see also Williams v Wells Fargo*, No. 11-21233-CIV, 2011 WL 4901346, at *5 (S.D. Fla. Oct. 14, 2011) (benefit passing through a third party does not preclude an unjust enrichment claim). To hold otherwise would undermine the equitable purpose of unjust enrichment claims. *Williams*, 2011 WL 4901346, at *5.

Regarding Spine Centers, State Farm has alleged that Spine Centers submitted more than $3.3 million in charges for inclusion in the settlement demands that were presented to State Farm. The amounts charged were determined solely by Spine Centers and greatly exceeded what Spine Centers paid the Surgeons and the Surgery Centers for their services. Although the payment passed through the attorneys as intermediaries, the benefit to Spine Centers is sufficiently alleged. As for the principals of Spine Centers–Morales, Cagno, Carlton, and Hernandez–who are alleged to have received a benefit from their ownership and control of Spine Centers through the payments made to Spine Centers, the conferral of a benefit is also adequately alleged. *See Physicians Inj. Care Ctr.*, *Inc.*, 427 F. App'x at 722–23 (finding sufficient evidence for unjust enrichment claim against individual defendants who were principals and executives that were heavily involved in the defendant Injury Care Center's operation).

Regarding the Surgeons and Surgery Centers, however, State Farm's allegations on its unjust enrichment claim against these Defendants fall short. State Farm argues that it has sufficiently pleaded that benefits were conferred by State Farm to Defendants because it alleges that Defendants here acted in concert by virtue of the Unlawful Referral Arrangement such that Defendants derived benefits from the

23

patient brokering scheme. The Court agrees with these Defendants that the alleged benefits are too tenuous and not direct. While State Farm alleges that the Surgery Centers and Surgeons benefitted from the referral arrangement, the referral of patients is not a benefit—direct or otherwise—that was conferred by State Farm. That said, State Farm does allege the Surgeons and Surgery Centers received a benefit from the predetermined payments made to them *by Spine Centers*, notably not State Farm. Doc. 1 ¶ 110. By its own allegations, the Surgeons and Surgery Centers were paid directly by Spine Centers before the bills were submitted to State Farm in support of plaintiffs' attorneys demands and before State Farm ever issued payments. Thus, neither the plaintiffs' attorneys nor Spine Centers could arguably be characterized as an "intermediary" where Surgeons and Surgery Centers were paid a predetermined amount for each service, prior to any submission of the bill to State Farm. Indeed, State Farm alleges that Spine Centers pays the Surgeons and Surgery Centers a predetermined amount based on the Medicare Fee Schedule for each service performed on a patient referred by Spine Centers. Doc. 1 ¶¶ 52, 56. The payments to the Surgeons and Surgery Centers are made prior to Spine Centers ever submitting any charges on a UB-04 claim form for submission to State Farm. *Id.* ¶¶ 54, 57. And the amount of the provider and facility charges included on the claim forms are without regard to what the Surgeons and Surgery Centers actually received from Spine Centers for the services performed. *Id.* Thus, nothing about State Farm's allegations reflect a

direct conferral of a benefit from State Farm to the Surgeons or the Surgery Centers.[4] Thus, State Farm fails to adequately allege a claim for unjust enrichment against the Defendant Surgery Centers and Surgeons. The motion to dismiss is due to be granted on the unjust enrichment claim as to these Defendants.

### 2. Adequate Remedy at Law

Defendants argue that the unjust enrichment claim fails because such equitable relief is not available when there is an adequate remedy at law. Because the unjust enrichment claim is based on the same conduct as State Farm's FDUTPA claim, Defendants contend the request for an equitable remedy cannot stand. This argument is unpersuasive and not a basis for dismissal of State Farm's unjust enrichment claim. The Federal Rules allow a plaintiff to allege alternative claims. *See* Fed. R. Civ. P. 8(d). Moreover, state and federal courts have similarly recognized that the existence of an adequate legal remedy will not necessarily bar an unjust enrichment claim. *See Williams v. Bear Stearns & Co.*, 725 So. 2d 397, 400 (Fla. 5th DCA 1998) (finding that although the general rule in Florida is that if the complaint on its face shows that adequate legal remedies exist, equitable remedies are not available, "this doctrine does not apply to claims for unjust enrichment"); *State Farm Mut. Auto. Ins. Co. v. Comprehensive Physician Servs., Inc.*, No. 8:14-cv-2381-JSM-AEP, 2014 WL 7070832, at

---

[4] This is not a case in which Plaintiff alleges that the procedures were not performed by the Surgeons or Surgery Centers, that the services provided were medically unnecessary, that the Surgeons and Surgery Centers overcharged for their services provided, or that if the Surgeons and Surgery Centers' bills were submitted, without the inflated upcharge by Spine Centers, they would not have been paid.

*3 (M.D. Fla. Dec. 15, 2014) (holding the existence of an adequate legal remedy does not bar a claim for unjust enrichment); *Gov't Emps. Ins. Co. v. Merced*, No. 8:20-CV-0802-KKM-AAS, 2021 WL 2417009, at *5 (M.D. Fla. June 14, 2021) (same). The motions to dismiss are due to be denied on this argument.

### D. Voluntary Payment Doctrine

Defendants contend that the voluntary payment doctrine bars State Farm's claims. Because State Farm was aware of the purported insurance fraud through the depositions of Drs. Bereczki and Bahri and nevertheless paid 18 of the 28 claims after those depositions were taken, Defendants argue that State Farm cannot prevail, at least with regard to those 18 claims.

Florida's "voluntary payment doctrine provides that 'where one makes a payment of any sum under a claim of right with knowledge of the facts, such a payment is voluntary and cannot be recovered.'" *Ruiz v. Brink's Home Sec., Inc.*, 777 So. 2d 1062, 1064 (Fla. 2d DCA 2001) (quoting *City of Miami v. Keton*, 115 So.2d 547, 551 (Fla. 1959)). State Farm alleges that if an insurer declines to settle a BI or UM claim, it may be sued by its own insured for breach of contract. Doc. 1 ¶ 9. When medical expenses approach or exceed available policy limits, personal injury attorneys often threaten insurers with bad faith litigation. *Id.* ¶ 31. While a threat of litigation alone does not render a payment involuntary, it is one of multiple factors courts can consider when determining whether a payment is involuntary. *State Farm Mut. Auto. Ins. Co. v. LaRocca*, 685 F. Supp. 3d 1354, 1362 (M.D. Fla. 2023) (citing *City of Key West v. Fla. Keys Cmty. Coll.*, 81 So.3d 494, 500-01 (Fla. 3d DCA 2012)). Here, State Farm alleges

that it made the payments without knowledge of the Defendants' Unlawful Referral Arrangement. Doc. 1 ¶ 77. Defendants argue that State Farm was aware. Such factual disputes cannot be resolved at the motion to dismiss stage. The voluntary payment doctrine is an affirmative defense and is more appropriately addressed on summary judgment or at trial. Defendants' motion to dismiss on this issue is denied.

### E. Motion to Strike

Defendant Hernandez requests the allegations in paragraph 16 of the Complaint be stricken under Fed. R. Civ. P. 12(f). The allegations sought to be stricken refer to Hernandez' prior federal incarceration for false statements pertaining to health care matters and conspiracy to commit money laundering, as well as allegations pertaining to submitting false reimbursement insurance claims in 2013 through 2015 for a non-party medical center. Hernandez urges the Court strike the allegations from the Complaint because they are irrelevant and unduly prejudicial to Hernandez.

State Farm responds in opposition arguing that Hernandez' prior criminal conviction may be admitted for purposes of impeachment or to attack his character for truthfulness, and State Farm submits the Court is without discretion to exclude Hernandez' guilty plea. Doc. 44.

While a witness' prior criminal conviction may be admissible for purposes of impeachment or to attack a witness' character for truthfulness, State Farm's allegations seek to inject more extraneous facts in paragraph 16 of the Complaint. Paragraph 16's allegations related to Hernandez submitting false insurance claims over 10 years ago on behalf of a non-party entity that is unrelated to any of the parties or claims in this

case is the type of impertinent and scandalous matter that would likely be prejudicial. Accordingly, the allegations of paragraph 16 related to Hernandez, except for the first sentence, are due to be stricken.[5]

Accordingly, it is

**ORDERED**:

1.     Defendant Surgical Center of North Florida, LLC's Corrected Motion to Dismiss Complaint (Doc. 37) is granted-in-part and denied-in-part. The motion is granted to the extent that the unjust enrichment claim in Count Two of the Complaint against Surgical Center of North Florida, LLC is dismissed.  In all other respects, the motion is denied.

2.     Surgical Center of North Florida, LLC shall file its response to Count One of the Complaint within fourteen days of the date of this Order.

3.     Defendants' Motion to Dismiss and Strike (Doc. 41) is granted-in-part and denied-in-part. The motion is granted to the extent that the allegations regarding Anthony Hernandez in paragraph 16, except for the first sentence of that paragraph, are stricken. Additionally, the motion to dismiss is granted as to the unjust enrichment claims in Count Two of the Complaint against Lifespine, LLC; Dr. Bereczki; North Florida Orthopedic Medicine, LLC; Dr. Bahri; and Legacy Surgery Center.  In all other respects, the motion is denied.

---

[5] This ruling does not preclude State Farm from impeaching Hernandez at trial with questions about any prior criminal convictions, as permitted by the Federal Rules of Evidence. Nor is the Court making a ruling at this time as to the ultimate admissibility at trial of prior similar conduct.

4.      Defendants Lifespine, LLC; Dr. Bereczki; North Florida Orthopedic Medicine, LLC; Dr. Bahri; and Legacy Surgery Center, LLC shall file their responses to Count One of the Complaint within fourteen days of the date of this Order. Defendants Spine Centers of America, Inc.; Robert Cagno; Lester Morales, Jr.; Brian Carlton, DC; and Anthony Hernandez shall file their responses to Counts One and Two of the Complaint within fourteen days of the date of this Order.

**DONE AND ORDERED** in Tampa, Florida on March 21, 2025.

*Charlene Edwards Honeywell*

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record
Unrepresented Parties, if any